IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| JACOB ESTRADA, | § | |
|     Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. H-15-0092 |
| | § | |
| JOHN FRANCIS HEALEY, JR., and | § | |
| MARK HAROLD HANNA, | § | |
|     Defendants. | § | |

## MEMORANDUM AND ORDER

This civil rights case is before the Court on Plaintiff Jacob Estrada's ("Plaintiff") Motion for Leave of Court to File Plaintiff's Amended Complaint ("Motion for Leave") [Doc. # 17], to which Defendants John Francis Healey, Jr. ("Healey") and Mark Harold Hanna ("Hanna") (collectively, "Defendants") filed a Response [Doc. # 18].  Plaintiff did not file a reply or request for additional time to do so.  The Motion for Leave is ripe for review.  Having reviewed the parties' briefing, all matters of record, and the applicable legal authorities, the Court **denies** Plaintiff's Motion for Leave.

## I.    BACKGROUND

On June 4, 2015, the Court issued a Memorandum and Order granting Defendant's Motion to Dismiss [Doc. # 7] and dismissing Plaintiff's claims in his Original Petition ("Petition") [Doc. # 1-1] under Federal Rule of Civil Procedure

12(b)(6) for failure to state a claim on which relief could be granted.  Memorandum

and Order ("M&O") [Doc. # 15], at 26.  In the M&O, the Court permitted Plaintiff to

file a motion for leave to amend his pleadings pursuant to Federal Rule of Civil

Procedure 15(a) if it was accompanied by a proposed amended complaint.  Plaintiff

timely filed the instant motion with a proposed Amended Complaint ("Proposed

Amended Complaint") [Doc. # 17-1].  Defendants have responded in opposition and

seek entry of a final dismissal order.

The Court's prior decision provided a detailed overview of the facts and

procedural history of this case.  *See* M&O, at 3-9.  The Court, accordingly, does not

repeat these details here.  In summary, on July 30, 2007, Plaintiff pleaded guilty in

Fort Bend County to possession of a controlled substance and was sentenced to eight

years in state custody.  Proposed Amended Complaint, ¶ 28.  A forensic scientist with

the Texas Department of Public Safety ("DPS"), Jonathon Salvador ("Salvador"),

prepared a laboratory report in Plaintiff's criminal case regarding the substance

Plaintiff allegedly possessed.  *Id.*  In 2012, nearly five years after Plaintiff pleaded

guilty, DPS informed district attorneys throughout the State of Texas, including the

Fort Bend County District Attorney's Office, that DPS had discovered Salvador

committed "errors" when testing controlled substances in multiple criminal

prosecutions.  *Id.*, ¶ 31.  Plaintiff alleges that the Texas Forensic Science Commission

issued a report on April 5, 2013, concluding that Salvador committed systematic errors that affected a third of the 4,944 criminal cases he worked on as a DPS forensic scientist for counties throughout the State of Texas.  *See id.*, ¶¶ 12, 50.  Plaintiff alleges that the Fort Bend County District Attorney's Office failed to timely disclose Salvador's misconduct to Plaintiff or any of the criminal defendants in Fort Bend County potentially affected by Salvador's misconduct.[1]  On October 7, 2013, Plaintiff filed a habeas petition seeking relief on the grounds that his due process rights were violated by Salvador's involvement in his case.  *Id.*, ¶ 57.  The Texas Court of Criminal Appeals ("TCCA") granted Plaintiff's petition in July 2014 apparently because the substance Plaintiff was convicted of possessing was not available to be retested.  *Id.*, ¶ 68.[2]

---

[1]    Plaintiff does not purport to bring claims on behalf of anyone but himself.

[2]    In 2013, prior to Plaintiff filing his habeas petition, the TCCA issued a series of decisions in response to the discovery of Salvador's misconduct.  The TCCA granted habeas relief for criminal defendants based on the conclusion that Salvador's involvement in those cases gave rise to a presumption of a due process violation.  *See, e.g.*, *Ex parte Turner*, 394 S.W.3d 513, 514 (Tex. Crim. App. 2013) (per curiam); *Ex parte Hobbs*, 393 S.W.3d 780, 780 (Tex. Crim. App. 2013).  However, on January 15, 2014, while Plaintiff's habeas petition was pending, the TCCA revised its approach to habeas petitions filed by criminal defendants seeking relief based on Salvador's misconduct.  *See generally Ex parte Cody*, 418 S.W.3d 597 (Tex. Crim. App. 2014).  Specifically, the TCCA held:

> [W]e now recognize that it is not appropriate to presume error and materiality in every case on which Salvador worked.  We believe the
> (continued...)

Notably, Plaintiff does not allege there has been a finding that Salvador's test results on the substance in Plaintiff's case were erroneous or false. Nor does Plaintiff allege that he did not possess the controlled substance referenced in his indictment. Plaintiff also does not allege that he was factually innocent of the crime charged or to

---

[2]       (...continued)

> better method for resolving these claims is to allow an applicant to shift the burden of the falsity issue to the State if the requisite predicate is proven, but the burden of persuasion with respect to materiality will always remain with the applicant. Thus, even if the State fails to rebut an inference of falsity, an applicant still must prove that the "false evidence" was material to his or her conviction.

*Id.* at 606. The TCCA further explained that materiality concerns included whether a portion of the recovered substance could be retested, whether there was additional evidence of guilt, and whether evidence probative of guilt was obtained from the recovered substance prior to Salvador receiving custody of the evidence. *Id.* at 600 n.7. In granting Plaintiff's petition, the TCCA reasoned:

> Applicant contends that his due process rights were violated because a forensic scientist did not follow accepted standards when analyzing evidence in his case. This case is one of many cases affected by a forensic scientist who was found to have not followed accepted standards when analyzing evidence. This Court addressed these cases in a recent published opinion. *Ex parte Coty*, 418 S.W.3d 597 (Tex. Crim. App. 2014). In *Coty*, this Court established a two-prong test to determine whether a due process violation occurred in a case handled by a forensic scientist who has been found to have committed misconduct in a different case.

> The trial court has made findings pursuant to that two-part test and recommends that this Court grant relief. That recommendation was agreed to by the State. Relief is granted.

*Ex parte Estrada*, No. WR-80,763-01, 2014 WL 2609669, at *1 (Tex. Crim. App. June 11, 2014) (per curiam).

which he pleaded guilty.  Rather, Plaintiff alleges that Salvador was responsible for testing the evidence in his case; Salvador falsified the results in many lab reports he issued; Salvador's supervisor(s) knew as early as 2007 that Salvador made many errors in his lab work; DPS acknowledged in 2012 that Salvador had falsified some test results; and the evidence from Plaintiff's 2007 criminal prosecution was destroyed on July 3, 2012, pursuant to a state court order issued on October 11, 2011, and thus that evidence could not be retested in 2012 to determine if Salvador had made an error or falsified lab results in Plaintiff's case.  *See id.*, ¶¶ 15, 17, 28, 29, 30, 31, 69.

The allegations in Plaintiff's Proposed Amended Complaint are the same as the allegations in his original Petition in many respects, particularly the detailed allegations regarding events that occurred from 2012 to 2014 related to Salvador's misconduct, Defendants' alleged knowledge of that conduct, and Defendants' response to DPS's disclosures of that conduct.  *See id.*, ¶¶ 31-69; *see also* M&O, at 3-8.  As explained in more detail below, Plaintiff's Proposed Amended Complaint also includes expanded allegations regarding events in 2007, characterizations of DPS's "official discovery" of Salvador's misconduct in 2012, and characterizations that, on information and belief, the Fort Bend County District Attorney's Office had "actual notice" or imputed knowledge of Salvador's frequent errors prior to Plaintiff's guilty plea in July 2007.  *See id.*, ¶¶ 12, 14, 15, 17, 18, 28, 31.

Plaintiff, in his Proposed Amended Complaint, asserts causes of action under 42 U.S.C. § 1983 against Defendant Healey, the "duly elected" District Attorney of Fort Bend County, Texas, and Defendant Hanna, an Assistant District Attorney of Fort Bend County, who Plaintiff alleges is Fort Bend County's "Chief Narcotics Prosecutor." Plaintiff sues these Defendants in both their individual and official capacities. Plaintiff alleges in the first cause of action that Defendants violated his rights under the Due Process Clause and Eighth Amendment of the United States Constitution by failing to comply with a prosecutor's duty to disclose exculpatory information under *Brady v. Maryland*, 373 U.S. 83 (1963), and, with regard to Healey, by failing to train and supervise prosecutors at the Fort Bend County District Attorney's Office on their *Brady* obligations. Plaintiff alleges in his second cause of action that Defendants falsely imprisoned him in violation of his Eighth Amendment rights.

Plaintiff's motion for leave to amend the pleadings has been fully briefed and is ripe for review.

## II.    APPLICABLE LEGAL STANDARDS

Rule 15(a)(2) of the Federal Rules of Civil Procedure provides that "[t]he court should freely give leave [to amend the pleadings] when justice so requires." FED. R. CIV. P. 15(a); *United States ex rel. Marcy v. Rowan Companies, Inc.*, 520 F.3d 384,

392 (5th Cir. 2008).  The Fifth Circuit has concluded that Rule 15(a) "evinces a bias in favor of granting leave to amend."  *Carroll v. Fort James Corp.*, 470 F.3d 1171, 1175 (5th Cir. 2006) (citation omitted).  However, leave to amend is by no means automatic, and the decision to grant or deny leave to amend "is entrusted to the sound discretion of the district court."  *Pervasive Software Inc. v. Lexware GmbH & Co.*, 688 F.3d 214, 232 (5th Cir. 2012).  "[U]nless there is a substantial reason to deny leave to amend, the discretion of the district court is not broad enough to permit denial."  *Dussouy v. Gulf Coast Inv. Corp.*, 660 F.2d 594, 598 (5th Cir. 1981); *accord Electrostim Med. Servs., Inc. v. Health Care Serv. Corp.*, No. 13-20649, 2015 WL 3745291, at *3 (5th Cir. June 16, 2015) (per curiam).

In deciding whether to grant leave to file an amended pleading, the district court "should consider factors such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party, and futility of amendment."  *In re Am. Int'l Refinery, Inc.*, 676 F.3d 455, 466 (5th Cir. 2012) (quoting *In re Southmark*, 88 F.3d 311, 315 (5th Cir. 1996)).  "Futility" in the context of a Rule 15 motion to amend means that the proposed "amended complaint would fail to state a claim upon which relief could be granted."  *Stripling v. Jordan Productions Co., LLC*, 234 F.3d 863, 873 (5th Cir. 2000); *see also Vaerla v. Gonzales*, 773 F.3d 704, 707 (5th Cir. 2014) ("[A]

7

district court may refuse leave to amend if the filing of the amended complaint would be futile, i.e., 'if the complaint as amended would be subject to dismissal[.]'") (quoting *Ackerson v. Bean Dredging LLC*, 589 F.3d 196, 208 (5th Cir. 2009)); *Duzich v. Advantage Finance Corp.*, 395 F.3d 527, 531 (5th Cir. 2004) (approving district court's denial of Rule 15(a) motion to amend using the same reasoning as it used in granting the Rule 12(b)(6) motion to dismiss).

When assessing whether an amended complaint filed in federal court fails to state a claim, and thus would be subject to dismissal under Federal Rule of Civil Procedure 12(b)(6), the complaint must be liberally construed in the plaintiff's favor, and all well pleaded facts in the complaint must be taken as true. *Thompson v. City of Waco, Tex.*, 764 F.3d 500, 502 (5th Cir. 2014); *Harrington v. State Farm Fire & Cas. Co.*, 563 F.3d 141, 147 (5th Cir. 2009). The complaint must, however, contain sufficient factual allegations, as opposed to legal conclusions, to state a claim for relief that is "plausible on its face." *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Patrick v. Wal-Mart, Inc.*, 681 F.3d 614, 617 (5th Cir. 2012). Regardless of how well-pleaded the factual allegations may be, they must demonstrate that Plaintiff is entitled to relief under a valid legal theory. *See, e.g.*, *Neitzke v. Williams,* 490 U.S. 319, 327 (1989); *McCormick v. Stalder,* 105 F.3d 1059, 1061 (5th Cir. 1997).

## III.   ANALYSIS

Plaintiff, asserting theories under 42 U.S.C. § 1983, sues Healey, the "duly elected" District Attorney of Fort Bend County, and Hanna, an Assistant District Attorney of Fort Bend County, in their individual and official capacities. Plaintiff lists two causes of action: "Eighth and Fourteenth Amendments" and "False Imprisonment." Proposed Amended Complaint, at 34, 41. The Court addresses each cause of action separately and concludes that neither states a legally viable claim.

### A.  Plaintiff's "First Cause of Action" Under the Eighth and Fourteenth Amendments

#### 1.  Same Allegations As the "First Cause of Action" in Plaintiff's Petition

The allegations in Plaintiff's "First Cause of Action" in the Proposed Amended Complaint asserting § 1983 violations of his Eighth and Fourteenth Amendment rights are substantially the same as the allegations in the "First" and only "Cause of Action" in Plaintiff's Petition. *Compare* Proposed Amended Complaint, ¶¶ 72-93, *with* Petition, ¶¶ 47-64. In each version, Plaintiff asserts multiple theories against Defendants. Both versions ground their claims against Healey and Hanna in their individual and official capacities on allegations that Defendants violated Plaintiff's Due Process and Eighth Amendment rights by failing to disclose potentially exculpatory information under *Brady v. Maryland*, 373 U.S. 83 (1963). The vast majority of allegations in Plaintiff's Proposed Amended Complaint, just as in

Plaintiff's original Petition, relate to conduct that occurred well after Plaintiff's guilty plea in 2007.  For the reasons explained in the M&O, the Court rejects Plaintiff's Due Process and Eighth Amendment claims that are grounded on Defendants' putative *Brady* violations subsequent to Plaintiff's 2007 conviction, that is, Plaintiff's "post-conviction" *Brady* claims.  These theories lack legal foundation.  Plaintiff has not identified, and the Court has not located, any authority supporting a right under *Brady* for disclosure of exculpatory information unknown to the prosecution before the conviction became final.  *See* M&O, at 1-2, 10-12, 14, 22; *Dist. Attorney's Office for Third Judicial Dist. v. Osborne*, 557 U.S. 52, 68-69 (2009).  For this reason, the Court also rejected Plaintiff's related liability theory of Defendants' allegedly inadequate training of prosecutors on putative post-conviction *Brady* obligations, and denied prospective injunctive relief requiring such instruction.  *See* M&O, at 12.

The Court also held in the M&O that qualified immunity and, to a certain extent, absolute immunity barred Plaintiff's individual capacity claims asserted in the Petition.  *See id.*, at 12-16.  The same reasoning applies to bar Plaintiff's identical individual capacity claims in the Proposed Amended Complaint.

Plaintiff continues in the Proposed Amended Complaint to assert official capacity claims based on the same facts and legal theories as the claims in his Petition, which the Court construed as claims against either the State of Texas, the Fort Bend

10

County District Attorney's Office, or Fort Bend County itself.  These theories still fail to state a valid claim for relief, for all the reasons set forth previously.  *See id.*, at 17-25.

### 2.      New Allegations in Plaintiff's Proposed Amended Complaint

The new allegations in Plaintiff's Proposed Amended Complaint appear primarily in the "Facts" section and relate to conduct that allegedly occurred prior to Plaintiff's guilty plea in July 2007.  Most of these new allegations relate to DPS supervisors, and not any personal conduct by Healey or Hanna.  Regarding Defendants Healey and Hanna, Plaintiff asserts matters "on information and belief" relying on testimony and evidence from other recently filed habeas cases that have revealed errors by Salvador either in the testing or chain of custody of the evidence in those several other cases.  *See id.*, ¶¶ 14, 17, 20-22.

In particular, Plaintiff asserts that one or more DPS supervisors were "on notice" or "had knowledge" of Salvador's high error rate prior to his guilty plea in 2007.  *Id.*, ¶¶ 15, 17.  Specifically, Plaintiff alleges "Salvador's direct supervisor" testified in another habeas case filed by a criminal defendant from Fort Bend County that the supervisor had knowledge in early 2007 of general errors and deficiencies in Salvador's work.  *Id.*, ¶¶ 14, 17.  Plaintiff further alleges that DPS had a "[s]tandard procedure" to review "at least monthly" "each technician's work sheets, logs, test

results and gas chromotagaph spectrums, in order to confirm that each technician was following proper procedures and protocols in performing the tests run." *Id.*, ¶ 15.[3]

Plaintiff asserts that any knowledge of Salvador's misconduct that anyone at DPS may have had in early 2007 may be imputed to "Healey" and "his Assistant District Attorneys" under *Kyles v. Whitley*, 514 U.S. 419 (1995). *See* Proposed Amended Complaint, ¶ 23. Plaintiff further alleges "Healey and his Office were on actual notice of the falsification of test results by Salvador" because "[o]n information and belief, it was also standard procedure for DPS to provide Healey's office with Salvador's entire case file, including work sheets, or the dates and 'results' reflected thereon, together with copies of the gas chromatograph spectrums, showing the results obtained and the dates that the GCS was performed, when this was requested by the prosecutor." *Id.*, ¶ 18. Finally, with regard to conduct in 2007, Plaintiff conclusorily asserts, "[b]ecause of the lab report submitted by DPS Chemist Salvador, and because of Defendants' failure to disclose the *Brady* material consisting of Salvador's falsifying and fabricating test results and his lack of understanding of chemistry, as well as the chain of custody issues, on July 30, 2007, Plaintiff pled guilty to the

---

[3]    Additionally, Plaintiff alleges that DPS maintained evaluations of Salvador stating that Salvador should "avoid short cuts" and "strive to minimize clerical and technical errors." *Id.*, ¶ 16. Plaintiff does not allege when these evaluations occurred or the time period they covered.

offense of Possession of a Controlled Substance."  *Id.*, ¶ 28.

Plaintiff does not expressly articulate in his causes of action a § 1983 claim based on a pre-conviction *Brady* violation.[4]  To the extent a liberal reading of Plaintiff's Proposed Amended Complaint may include such a cause of action against Healey and Hanna in their individual or official capacities, Plaintiff fails to state a legally cognizable claim for the reasons explained below.  Further, as explained hereafter, to the extent Plaintiff's new allegations relate to claims against Healey for failure to train or supervise prosecutors in Fort Bend County on their *Brady* obligations, the claims are not viable.

### a.    Individual Capacity Claims

Prosecutors are absolutely immune from liability in § 1983 lawsuits for "actions that are 'intimately associated with the judicial phase of the criminal process.'"  *Van de Kamp v. Goldstein*, 555 U.S. 335, 341 (2009) (quoting *Imbler v. Pachtman*, 424 U.S. 409, 430 (1976)).  Plaintiff's individual capacity claims against District Attorney

---

[4]    Plaintiff also refers in passing to "Salvador's test results" as potential impeachment evidence.  Proposed Amendment Complaint, ¶¶ 24, 25.  Plaintiff does not articulate a claim based on a prosecutor's duty to disclose impeachment evidence under *Giglio v. United States*, 405 U.S. 150 (1972), and its progeny.  Plaintiff pleaded guilty, and thus the application of *Giglio* is tenuous at best.  Further, whether Plaintiff's claims based on a failure to disclose evidence related to Salvador's misconduct is characterized as a *Brady* claim for failure to disclose exculpatory evidence or a *Giglio* claim for failure to disclose impeachment evidence is not dispositive of the instant motion.

Healey and Assistant District Attorney Hanna based on an alleged failure to disclose *Brady* material during Plaintiff's criminal prosecution in 2007 thus are barred by absolute immunity.  *Truvia v. Julien*, 187 F. App'x 346, 348 (5th Cir. 2006) (per curiam) (stating the Fifth Circuit "has specifically held that the suppression of exculpatory evidence . . . is shielded by absolute immunity" (citing *Cousin v. Small*, 325 F.3d 627, 635 & n.11 (5th Cir. 2003)).

Absolute immunity also bars Plaintiff's individual capacity claims against Healey alleging violations of Plaintiff's constitutional rights based on Healey's failure to train and failure to supervise district attorneys in Fort Bend County on their *Brady* obligations.  In *Van de Kamp v. Goldstein*, the Supreme Court held that absolute immunity bars individual capacity claims against a district attorney for failure to train or failure to supervise deputy district attorneys on their obligations under *Giglio v. United States*, 405 U.S. 150 (1972).  *Van de Kamp*, 555 U.S. at 34. The Court explained:

> [U]nlike with claims related to administrative decisions, an individual prosecutor's error in the plaintiff's specific criminal trial constitutes an essential element of the plaintiff's claim.  The administrative obligations at issue here are thus unlike administrative duties concerning, for example, workplace hiring, payroll administration, the maintenance of physical facilities, and the like.  Moreover, the types of activities on which [plaintiff's] claims focus necessarily require legal knowledge and the existence of related discretion, *e.g.*, in determining what information should be included in the training and the supervision or the information-

> system management.  And in that sense also [plaintiff's] claims are
> unlike claims of, say, unlawful discrimination in hiring employees.
> Given these features of the case before us, we believe absolute immunity
> must follow.

*Id.*  Under this reasoning, Plaintiff's individual capacity claims against Healey for

failure to train or failure to supervise Fort Bend County prosecutors on their *Brady*

obligations are barred by absolute immunity.  *See id.* at 347 ("[O]ne cannot easily

distinguish, for immunity purposes, between claims based upon training or

supervisory failures related to *Giglio* and similar claims related to other constitutional

matters (obligations under *Brady v. Maryland*, 373 U.S. 83 (1963), for example).").[5]

Further, even if Plaintiff's individual capacity claims were not barred by

absolute immunity, Plaintiff has failed to allege a viable claim against Hanna or

Healey premised either on a theory that a *Brady* violation occurred in his 2007

criminal prosecution or a theory that Healey failed to train or supervise district

attorneys in Fort Bend County on their *Brady* obligations.  *See infra* Part

---

[5]     *See also Jones v. City of New York*, 988 F. Supp. 2d 305, 317 (E.D.N.Y. 2013) ("The
Supreme Court's . . . decision in *Van de Kamp v. Goldstein*, 555 U.S. 335 (2009),
establishes that the training provided by a district attorney's office to its prosecutors
concerning the proper disclosure of exculpatory or impeachment material is a
prosecutorial function entitled to absolute prosecutorial immunity."); *Johnson v.
Louisiana*, Civ. Action No. 09-55, 2010 WL 996475, at *8 (W.D. La. Mar. 16, 2010)
("[A]bsolute immunity applies not only to a prosecutor's failure to disclose
impeachment material, but also to claims that a *Brady* or *Giglio* violation resulted
from the district attorney's failure to train, failure to supervise, and failure to establish
an information system.").

III.A.2(b)(iii).

**b.    Official Capacity Claims**

**i.    Prosecutors Acting in Prosecutorial Capacity Are Agents of the State**

In Texas, "when acting in the prosecutorial capacity to enforce state penal law, a district attorney is an agent of the state, not of the county in which the criminal case happens to be prosecuted." *Esteves v. Brock*, 106 F.3d 674, 678 (5th Cir. 1997); *see also* M&O, at 17-19.  Plaintiff's official capacity claims against Healey and Hanna based on the officials' conduct during Plaintiff's criminal prosecution in 2007 thus are construed as claims against the State of Texas.  *See Hafer v. Melo*, 502 U.S. 21, 25 (1991) ("Suits against state officials in their official capacity therefore should be treated as suits against the State.").  Similarly, in Texas, claims for failure to train prosecutors on *Brady* duties are deemed claims against the State, not the County.  *See Mowbray v. Cameron Cnty., Tex.*, 274 F.3d 269, 278 (5th Cir. 2001) ("Because [the prosecutors] are state officers, the county cannot be liable for a failure to train them [on *Brady* duties].");  M&O, at 20.

**ii.    Claims Against the State of Texas for Monetary Relief**

The State of Texas is not a "person" that can be sued under § 1983 for monetary damages.  *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989); *see also*

M&O, at 19-20.  Accordingly, Plaintiff's official capacity claims for money damages based on District Attorney Healey's or Assistant District Attorney Hanna's conduct during Plaintiff's criminal prosecution, construed as claims against the State of Texas, fail to state a claim for monetary damages on which relief can be granted.

### iii.    Claims Against the State of Texas for Injunctive Relief

As noted in the Court's M&O, to the extent Plaintiff seeks prospective injunctive relief of training of prosecutors to address alleged violations of a prosecutor's post-conviction *Brady* obligations, the claim lacks legal foundation. M&O, at 12, 20.  To the extent Plaintiff now intends to assert an official capacity claim against Healey or Hanna for prospective injunctive relief based on their conduct in prosecuting Plaintiff's case prior to his 2007 conviction,[6] the claim fails for several reasons, as explained hereafter.

Plaintiff, in a verbal sleight of hand, asserts that he "obtained an unfair trial–one

---

[6]    Plaintiff's requests for injunctions are directed solely towards remedying the alleged failure to train Fort Bend County district attorneys on *Brady* obligations.  Plaintiff states only that: (1) he "sues Defendants Healey and Hanna for a permanent injunction requiring them to attend continuing legal education classes on what constitutes *Brady* material and on the duties that *Brady* imposes upon prosecutors to notify defendants of this material," and (2) "Plaintiff sues Defendant Healey for a permanent injunction requiring him to institute proper training procedures within his Office on *Brady* and the duties that *Brady* imposes upon prosecutors to notify defendants of this material and to institute procedures within his Office to make sure that *Brady* duties are complies with."  Proposed Amended Complaint, ¶¶ 85, 91.

whose outcome would have been different had the *Brady* information been timely and properly disclosed." *See* Proposed Amended Complaint, ¶ 28.[7]  Plaintiff, however, alleges that he pleaded guilty to possession of a controlled substance; no trial occurred in his case.[8]  *Id.*  In the Fifth Circuit, a criminal defendant's "guilty plea waives the right to claim a *Brady* violation."  *U.S. v. Conroy*, 567 F.3d 174, 178 (5th Cir. 2009) (per curiam); *accord U.S. v. Hooper*, No. 14-11153, 2015 WL 3941448, at *1 (5th Cir. June 29, 2015) (per curiam) ("[Defendant's] guilty plea precludes him from raising a claim that the Government failed to disclose exculpatory evidence in violation of *Brady v. Maryland*, 373 U.S. 83 (1963), and his argument is foreclosed by circuit precedent.") (citing *Conroy*, 567 F.3d 178-79; *Orman v. Cain*, 228 F.3d 616, 617 (5th Cir. 2000); *Matthew v. Johnson*, 201 F.3d 353, 361-62 (5th Cir. 2000)).[9]

---

[7]     *See also id.*, ¶¶ 15, 16, 17, 18, 19, 23 (contending each of the 315 criminal defendants potentially affected by Salvador's misconduct received an "inherently unfair trial"); *id.*, ¶ 78 ("This failure to supervise resulted in everyone in Defendant Healey's office showing deliberate indifference to the Due Process and Eighth Amendment rights of Plaintiff and the other 70-plus directly-affected defendants, each of whom received an inherently unfair trial."); *id.* ¶ 82 ("These communications prove that Plaintiff received an inherently unfair trial in the first instance.").

[8]     He alleges that he was indicted on December 6, 2006, and pleaded guilty on July 30, 2007, to possession of a controlled substance.  *Id.*, ¶¶ 24, 28.

[9]     The Fifth Circuit's approach has not been adopted by most other circuits.  *See United States v. Nelson*, 979 F. Supp. 123, 129 & n.5 (D.D.C. 2013) (collecting cases and explaining that "[w]hile neither the D.C. Circuit nor the Supreme Court has spoken on whether a defendant can withdraw his guilty plea postsentencing if he entered it without the government having disclosed exculpatory evidence it possessed, the
                                                                                                    (continued...)

Even if Plaintiff's *Brady* claim were not foreclosed by his guilty plea under Fifth Circuit precedent, Plaintiff's Amended Complaint does not contain factual allegations that reveal misconduct by Defendant Healey or Defendant Hanna that constitutes a pre-conviction *Brady* violation in his criminal case. "[A] government official can be held liable only for his own misconduct." *Carnaby v. City of Houston*, 636 F.3d 183, 189 (5th Cir. 2011) (citing *Ashcraft v. Iqbal*, 556 U.S. 662, 677 (2009)). First, as to Hanna, Plaintiff has not alleged that Hanna was the prosecutor or was otherwise personally involved in Plaintiff's case in 2007.[10] Furthermore, Plaintiff's allegations relating specifically to Hanna address only the time period from 2012 to 2014, well after Plaintiff's July 2007 guilty plea. Plaintiff, therefore, fails to state a viable individual or official capacity claim against Hanna grounded on a theory that a *Brady* violation occurred in Plaintiff's criminal case.

Plaintiff also has not alleged that Healey was personally involved in Plaintiff's 2007 criminal prosecution. Instead, Plaintiff appears to pursue his claims against Healey under a theory of supervisor liability. More specifically, Plaintiff alleges his

---

[9]     (...continued)
        majority of circuits to have considered the issue have held that a *Brady* violation can
        justify allowing a defendant to withdraw a guilty plea.").

[10]    Plaintiff not articulated a claim against Hanna for supervisor liability. To the extent
        Plaintiff intends to pursue such a claim, Plaintiff fails to state a valid claim for the
        reasons explained below.

constitutional rights were violated by Healey's failure to train himself and to train and supervise the assistant district attorneys in his office on their *Brady* obligations to disclose exculpatory evidence.  *See* Proposed Amended Complaint, ¶¶ 74, 76, 77, 78, 85.  Plaintiff's theories are unavailing.

"A supervisor not personally involved in the acts that allegedly deprived the plaintiff of his constitutional rights is liable under § 1983 only if (1) the supervisor failed to train or supervise the [subordinates] involved; (2) there is a causal connection between the alleged failure to supervise or train and the alleged violation of the [plaintiff's] rights; and (3) the failure to train or supervise constituted deliberate indifference to the [plaintiff's] constitutional rights." *Estate of Pollard v. Hood Cnty., Tex.*, 579 F. App'x 260, 267 (5th Cir. 2014); *accord Pierce v. Hearne Indep. Sch. Dist.*, 600 F. App'x 194, 199 (5th Cir. 2015); *Smith v. Brenoettsy*, 158 F.3d 908, 911-12 (5th Cir. 1998).  The Fifth Circuit has held that it is "facially evident" this test for supervisor liability "cannot be met if there is no underlying constitutional violation." *Rios v. City of Del Rio, Tex.*, 444 F.3d 417, 425 (5th Cir. 2006).  Plaintiff points in this case solely to alleged *Brady* violations as the "underlying constitutional violation." As explained below, because Plaintiff has failed to allege facts establishing that a *Brady* violation occurred in his own criminal case, Plaintiff necessarily also fails to allege facts supporting claims against Healey for supervisor liability premised on a

theory of failure to train or failure to supervise Fort Bend County prosecutors on their *Brady* obligations.

First, to the extent Plaintiff asserts putative post-conviction *Brady* violations, Plaintiff's allegations lack legal foundation, as held in the Court's M&O, at 10-12, 15. Plaintiff's Proposed Amended Complaint does not cure this pleading deficiency.

Regarding a pre-conviction *Brady* claim, "the State violates a defendant's right to due process if it withholds evidence that is favorable to the defense and material to the defendant's guilt or punishment." *Smith v. Cain*, 132 S. Ct. 627, 630 (2012).  To establish a *Brady* violation, a criminal defendant must demonstrate (1) that the prosecutor willfully or inadvertently suppressed evidence; (2) that the evidence was favorable to the defendant, either because it was exculpatory or because it has impeachment value; and (3) the evidence was material such that prejudice ensued. *Strickler v. Greene*, 527 U.S. 263, 281-82 (1999); *Kyles v. Whitley*, 514 U.S. 419, 432-33 (1995).  Plaintiff alleges in conclusory fashion that "Defendants" failed to disclose "*Brady* material" in his criminal case "consisting of Salvador's falsifying and fabricating test results and his lack of understanding of chemistry, as well as the chain of custody issues." *Id.*, ¶ 28.[11]  Plaintiff does not allege that an error occurred in the

---

[11]    Plaintiff fails to identify any specific prosecutor or prosecutors who actually handled his criminal prosecution in 2007.  His allegations only refer to generally to district
(continued...)

testing of the substances in his case or that an issue existed with the chain of custody of the evidence in his case.  Rather, Plaintiff relies on allegations that Salvador had committed errors in other cases prior to Plaintiff's guilty plea in July 2007, that one or more DPS supervisors were aware of Salvador's errors in early 2007, and that "Healey and his Office" were on "actual notice of the falsification of test results by Salvador." *See id.*, ¶¶ 15, 17, 18.

The Court assumes without deciding that Plaintiff has sufficiently pleaded facts (1) that the prosecutor or a member of the "prosecution team" on Plaintiff's criminal case "suppressed" evidence of Salvador's errors or misconduct, in general, prior to Plaintiff's guilty plea in July 2007, and (2) that evidence of errors committed by Salvador in other cases qualifies as exculpatory or impeachment evidence in Plaintiff's case.[12]  Even with these assumptions, and even further assuming *arguendo*

---

[11]    (...continued)
attorneys in the Fort Bend County District Attorney's Office.

[12]    Embedded in Plaintiff's allegations is the argument that DPS supervisors' knowledge of Salvador's errors or deficiencies may be imputed to the prosecutor handling Plaintiff's case because prosecutors have "a duty to learn of any favorable evidence known to the others acting on the government's behalf in the case, including the police." *See Kyles*, 514 U.S. at 437.  In the Fifth Circuit, "[i]t is well-settled that if a member of the prosecution team has knowledge of *Brady* material, such knowledge is imputed to the prosecutors." *Avila v. Quarterman,* 560 F.3d 299, 307 (5th Cir. 2009).  "Exactly who constitutes a member of the prosecution team is done after a case-by-case analysis of the extent of interaction and cooperation between the two governments." *United States v. Cutno*, 431 F. App'x 275, 278 (5th Cir. 2011) (continued...)

that Plaintiff's *Brady* claim was not foreclosed by his guilty plea, Plaintiff's claim fails because he has not alleged that the undisclosed evidence regarding Salvador's errors or deficiencies was "material" in that he was prejudiced by the nondisclosure. "Evidence is material if there is 'a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different.'" *Miller v. Dretke*, 404 F.3d 908, 914 (5th Cir. 2005) (quoting *United States v. Bagley*, 473 U.S. 667, 682 (1985)) (emphasis omitted). "The question is not whether the defendant would more likely than not have received a different verdict with the evidence, but whether in its absence he received a fair trial, understood as a trial resulting in a verdict worthy of confidence." *Kyles*, 514 U.S. at 434.

Plaintiff does not allege that he would not have pleaded guilty in July 2007 if the prosecutor had disclosed that Salvador had committed errors in one or more other cases in early 2007. Nor does Plaintiff challenge the outcome of the testing of the controlled substance involved in his case. Nowhere does he allege that he did not knowingly possess a controlled substance, *i.e.*, that he was factually innocent of the

---

12      (...continued)
        (quoting *Avila*, 560 F.3d at 308 (internal quotation marks omitted)). The Court does not reach the issue here of whether Salvador or any of the DPS supervisors referenced in Plaintiff's allegations qualify as members of the "prosecution team" on Plaintiff's case. The Court also does not reach Defendants' arguments that Plaintiff fails to state a valid claim because his allegations amount only to negligence. Response, at 4.

crime to which he pleaded guilty.  Instead, Plaintiff relies on evidence that Salvador

has been shown to have committed errors in *other* cases.

To the extent Plaintiff contends the information on Salvador's conduct was

impeachment evidence in his case, Plaintiff fails to state a valid claim.  Plaintiff fails

to explain what significance, if any, "impeachment" of Salvador would have had on

his decision to enter a guilty plea.  Plaintiff ultimately obtained release in 2014

because the evidence in his case was destroyed and thus could not be retested five

years after Plaintiff pleaded guilty.

In sum, Plaintiff has not alleged facts that create a reasonable probability that,

had evidence related to those other cases been disclosed to the defense in Plaintiff's

case in early 2007, the outcome of Plaintiff's criminal case would have been different.

*See Miller*, 404 F.3d at 914.  Plaintiff, therefore, fails to allege facts supporting a

*Brady* violation in his case, and thus fails to allege a necessary element for a claim

against Healey for supervisor liability based on a failure to train or supervise

prosecutors' on their *Brady* obligations.[13]  Accordingly, Plaintiff fails to state a legally

---

[13]   Because the Court concludes that Plaintiff has failed to allege facts supporting the existence of an underlying *Brady* violation that would give rise to a claim of supervisor liability against Healey for failure to train or supervise prosecutors on their *Brady* obligations, the Court does not decide the remaining elements of proving a claim for supervisor liability.  The Court notes, however, that it is far from clear that Plaintiff has alleged facts that would satisfy the "stringent standard" for proving

(continued...)

viable official capacity claim against Healey, and thus the State of Texas. Plaintiff

lacks support for his request for prospective injunctive relief seeking training of Fort

Bend County prosecutors on their *Brady* obligations.[14]

---

13    (...continued)

deliberate indifference. *See Connick v. Thompson*, 131 S. Ct. 1350, 1361 (2011). "A pattern of similar constitutional violations by untrained employees is 'ordinarily necessary' to demonstrate deliberate indifference for purposes of failure to train." *Id.* Plaintiff's Proposed Amended Complaint provides some details regarding the effect of Salvador's misconduct on a couple of other criminal cases, *e.g.*, Proposed Amended Complaint, ¶¶ 13, 14, 20-22, and refers generally to other cases with evidence Salvador tested. Most of the cases with errors apparently occurred after Plaintiff's case was concluded. *See* Proposed Amended Complaint, ¶ 50; *cf. Truvia v. Connick*, 577 F. App'x 317, 324 (5th Cir. 2014) (holding plaintiffs' evidence failed to show that the district attorney's office was deliberately indifferent to a need for *Brady* training before plaintiffs' criminal trial in part because "the 'violations' [plaintiffs] refer to are not proven *Brady* violations; instead, they are the same discovery requests made by counsel in other, unrelated cases to which the prosecutors responded by denying possession of *Brady* material" and plaintiffs "citations to over a dozen federal and state cases to show a 'continuum' of *Brady* violations are not probative because the vast majority of them occurred after [plaintiffs] were convicted").

14    Plaintiff has not sued the County of Fort Bend in his First Cause of Action. Plaintiff did not name the County as a party in the Petition, and Plaintiff's official capacity claims against Healey and Hanna for their conduct during criminal prosecutions were construed as claims against the State of Texas, not the County. *See* M&O, at 17-18; *see also supra* Part III.A.2(b)(i). Plaintiff's new pleading similarly fails to name Fort Bend County as a party. Plaintiff, nevertheless, continues to include allegations that sound in municipality liability. *See, e.g.*, Proposed Amended Complaint, ¶ 90. To the extent Plaintiff intends to sue the County of Fort Bend either for injunctive or monetary relief, Plaintiff's Proposed Amended Complaint fails to cure the pleading deficiencies identified by the Court. *See* M&O, at 21-25. Specifically, Plaintiff's Proposed Amended Complaint does not allege Healey or Hanna acted as a policymaker of the County for any decision in issue. *See* M&O, at 10-12, 22 n.26. Plaintiff also does not identify what "policy" allegedly caused constitutional injury other than possibly failure to train prosecutors on *Brady* obligations. For the reasons

(continued...)

Regarding Plaintiff's "First Cause of Action," Plaintiff fails to correct the pleading deficiencies previously identified and fails to state a claim upon which relief may be granted for monetary or injunctive relief under Rule 12(b)(6) standards and, therefore, the proposed § 1983 claim in Plaintiff's First Cause of Action is futile. Leave to amend to add this claim is not warranted under Rule 15.

### B.   Plaintiff's "Second Cause of Action" For False Imprisonment

Plaintiff's Proposed Amended Complaint adds a Second Cause of Action under § 1983 against Healey and Hanna "in their individual and official capacities for violating his civil and constitutional rights under the Eighth Amendments [sic] for falsely imprisoning him." Proposed Amended Complaint, ¶ 95. The Fifth Circuit has recognized that a plaintiff may bring a § 1983 claim based on false imprisonment. *See Douthit v. Jones*, 619 F.2d 527, 532 (5th Cir. 1980). To state a valid § 1983 claim for false imprisonment, Plaintiff must allege the elements of § 1983, including the deprivation of a constitutional right, in addition to the common law elements of a false imprisonment claim. *Harper v. Merckle*, 638 F.2d 848, 860 (5th Cir. 1981); *Douthit*, 619 F.2d at 532 (5th Cir. 1980) ("To establish a cause of action under § 1983,

---

14       (...continued)
        explained above and in the Court's prior M&O, Plaintiff fails to state a valid claim
        against Fort Bend County for either monetary or injunctive relief premised on a theory
        that his constitutional rights were violated by Healey's failure to train or supervise
        Fort Bend County prosecutors' on their *Brady* obligations. *See* M&O, at 21-25.

however, a party must also show that the defendant, while acting under color of law, deprived him of a right 'secured by the Constitution and laws' of the United States . . . .").

Plaintiff summarily recites the elements of a *prima facie* case for a common law false imprisonment claim.  Proposed Amended Complaint, ¶ 95.[15]  But, Plaintiff's vague, conclusory allegations in his Second Cause of Action fail to explain the legal theory or theories under which Plaintiff pursues this claim.  Liberally construing the Proposed Amended Complaint, it appears Plaintiff bases this claim on his allegations in the "Facts" section that "Defendants deliberately chose to withhold information from Estrada to keep him imprisoned when he should have been a free man."  *Id.*, ¶¶ 42, 43, 46; *see also id.*, ¶¶ 49, 59, 60, 61, 69, 77, 78.  These allegations are unavailing.  They describe Healey's and Hanna's conduct in 2012 to 2014 and in regard to Plaintiff's habeas proceeding.  Construed most favorably to Plaintiff, his false imprisonment claim is that he was entitled to habeas relief as early as July 2012 when Healey and Hanna allegedly had been officially informed that DPS employee Salvador had falsified test results in other cases, that Salvador's misconduct

---

[15]   The Fifth Circuit has held that the elements of a *prima facie* common law false imprisonment cause of action are: "(1) intent to confine, (2) acts resulting in confinement, and (3) consciousness of the victim of confinement or resulting harm." *Bryan v. Jones*, 530 F.2d 1210, 1213 (5th Cir. 1976); *accord Douthit*, 619 F.2d at 532; *Harper*, 638 F.2d at 860.

potentially affected Plaintiff's case, and that the potentially affected evidence in Plaintiff's case had been destroyed and thus could not be retested.  *See id.*, ¶¶ 31-34. The Court assumes *arguendo* that Plaintiff has sufficiently pleaded the common law elements of a *prima facie* false imprisonment claim.  Plaintiff's "Second Cause of Action" nevertheless fails to state a legally viable § 1983 claim because Plaintiff has not alleged Healey or Hanna's conduct violated Plaintiff's legally cognizable post-conviction constitutional rights.

Plaintiff alleges that he was falsely imprisoned in violation his Eighth Amendment rights.  The Fifth Circuit has held:

> "'The primary purpose of [the Cruel and Unusual Punishments] clause has always been considered . . . to be directed at the method or kind of punishment imposed for the violation of criminal statutes . . . .'" *Ingraham v. Wright*, 430 U.S. 651, 667 (1977) (quoting *Powell v. Texas*, 392 U.S. 514, 531-32 (1968)).  [Plaintiff], complaining about the fact of his incarceration rather than its conditions, fails to state a cause of action under the Eighth Amendment.

*Jones v. City of Jackson*, 203 F.3d 875, 880 (5th Cir. 2000) (first alteration in original).  Plaintiff does not allege the conditions of his confinement violated his Eighth Amendment rights, and thus fails to state a false imprisonment cause of action for a violation of his Eighth Amendment rights.[16]  Accordingly, Plaintiff's Second

---

[16]     Plaintiff correctly does not assert that Defendants falsely imprisoned him in violation of his due process rights under the Fourteenth Amendment, although the Fifth Circuit

(continued...)

Cause of Action fails to state a cognizable claim and must be dismissed.

## IV.   CONCLUSION AND ORDER

To the extent Plaintiff's allegations are credited, Plaintiff describes some conduct by Healey, Hanna, the Fort Bend County District Attorney's Office, and DPS regarding delays of disclosure of information related to Salvador's misconduct and the absence of attention to and training on prosecutors' *Brady* obligations that this Court does not condone.   However, for the reasons stated above, the Court concludes that Plaintiff's Proposed Amended Complaint fails to state a valid claim on which relief may be granted for monetary damages or prospective injunctive relief.   *See* FED. R. CIV. P. 12(b)(6).   Granting leave to amend, therefore, would be futile and is unwarranted under Federal Rule of Civil Procedure 15.   Accordingly, it is hereby

---

[16]   (...continued)
has recognized that such violation may result if a criminal defendant has been detained without proper due process protections.   *See Jones*, 203 F.3d at 880-81 (holding alleged nine month detention pursuant to a detainer issued by the county sheriff without being brought before a judge or magistrate judge for over nine months stated a valid claim for a violation of Fourteenth Amendment rights); *Douthit*, 618 F.2d at 532 (holding allegations that defendants imprisoned plaintiff for thirty days beyond the sentence imposed upon him without a valid commitment order stated a valid claim for a violation of his Fourteenth Amendment due process rights).   Prior to 2012, Plaintiff was convicted and detained in 2007 pursuant to his guilty plea.   He does not allege that he was detained longer than necessary after a state court ordered his release in 2014.   To the extent Plaintiff complains that Healey's and Hanna's conduct in 2012 in failing to disclose potentially exculpatory evidence or in handling his habeas request in 2013 to 2014 constituted a due process violation because he had post-conviction *Brady* rights, Plaintiff's claims lack legal basis, as discussed above and in the Court's M&O.

**ORDERED** that Plaintiff's Motion for Leave of Court to File Plaintiff's

Amended Complaint [Doc. # 17] is **DENIED**.

The Court will issue a separate order dismissing this case with prejudice.

SIGNED at Houston, Texas, this 31st day of **July, 2015**.

NANCY F. ATLAS
SENIOR UNITED STATES DISTRICT JUDGE